644 So.2d 1075 (1994)
Loann G. LEDET
v.
MONTGOMERY ELEVATOR CO. & XYZ Insurance Company.
No. 94-CA-0411.
Court of Appeal of Louisiana, Fourth Circuit.
October 13, 1994.
*1076 Patricia Miskewicz, Clyde Ramirez & Associates, New Orleans, for plaintiff/appellant, Loann Ledet.
Robert E. Leake, Jr., Leake & Anderson, New Orleans, for defendant/appellee, Montgomery Elevator Co.
Before PLOTKIN, JONES and LANDRIEU, JJ.
PLOTKIN, Judge.
Plaintiff, Loann Ledet, was injured in an accident in a freight elevator. She brought suit against defendant, Montgomery Elevator Company, which held a contract to service the elevator. The matter proceeded to trial and at the conclusion of plaintiff's case-in-chief, the district judge granted defendant's motion for a directed verdict, concluding that there was insufficient evidence to find defendant liable for plaintiff's injuries. From this ruling, plaintiff appeals, asking that the lower court's decision be reversed.

FACTS
Plaintiff was an employee of the Internal Revenue Service, working at the F. Edward Hebert building. On July 22, 1991, while using the freight elevator[1] in that building, plaintiff became trapped when the elevator stopped between two floors. After ringing the alarm bell and shouting for help for approximately 45 minutes, plaintiff manually opened the doors to the elevator and stepped out, all with no injury to herself. Two days later, on July 24, 1991, while riding in the same freight elevator, plaintiff again became trapped when the elevator stopped between floors. Plaintiff and a co-worker who had accompanied her rang the bell and shouted for help, with no response. When plaintiff attempted to open the doors and exit the elevator this time, she injured her back.
Plaintiff brought suit against Montgomery[2] and its insurer, asserting claims of negligence and strict liability. The matter proceeded to trial before a jury. At trial, plaintiff introduced no testimony from any expert witnesses as to potential causes of or explanations for the accident. The only witness called by plaintiff who offered any testimony about what might have caused the accident was a security guard for the building, Kerry Williams, who opined that there were problems with the elevators "due to construction" work being performed by Dawson. At the close of plaintiff's case, the court granted defendant's motion for a directed verdict, stating that "[t]here was absolutely no evidence of negligence on the part of Montgomery Elevator in this particular case." From this ruling, plaintiff appeals.

ISSUE
The only issue in this case is whether the trial court was correct in granting defendant's motion for a directed verdict.

ANALYSIS
In this case, the trial court granted defendant's motion for a directed verdict at the close of plaintiff's case-in-chief. A directed verdict is permissible under La.C.C.P. art. 1810 only when the facts and inferences derived therefrom point so strongly in favor of *1077 the moving party that reasonable persons could not disagree with the verdict. Wilson v. Hibernia Nat'l Bank, 517 So.2d 1206, 1208 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (La.1988). A directed verdict should be upheld on appeal if, "after viewing the evidence submitted, the appellate court can conclude that reasonable persons could not reach a contrary verdict." Graham v. Southern Pacific Transp. Co., 619 So.2d 894, 897 (La.App. 3d Cir.), writ denied, 625 So.2d 1044 (La.1993).
In its brief, plaintiff argues that defendant could be found liable under several different legal theories. Each of these theories will be discussed separately.

A. Negligence
Although the Supreme Court has never ruled directly on the issue, see Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La. 1992) (pretermitting issue), this circuit has definitively held that an elevator repairer is not required to exercise the highest degree of care. E.g., Ellis v. Dover Elevator Co., 597 So.2d 1, 6 (La.App. 4th Cir.), writ denied, 604 So.2d 973 (La.1992); Brown v. Otis Elevator Co., 535 So.2d 525, 527 (La.App. 4th Cir.1988); Wilson v. Hibernia Nat'l Bank, 517 So.2d 1206, 1208 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (La.1988); Austin v. Otis Elevator Co., 336 So.2d 914, 918 (La. App. 4th Cir.1976). Rather, the repairer must only "exercise reasonable care in the performance of services under its contract with the building owner." Wilson, 517 So.2d at 1208. Therefore, to prove defendant was negligent, plaintiff must demonstrate that defendant "as the maintenance contractor breached its duty to exercise reasonable care in the performance of services under its contract" and that defendant's "conduct was a cause in fact of the resulting injury." Rabito v. Otis Elevator Co., 93-1001 (La.App. 4th Cir. 2/11/94); 633 So.2d 368, 372, writ granted and case remanded, 94-0949 (La. 6/17/94), 638 So.2d 1075.
In this case, plaintiff failed to carry her burden of proof under both prongs of the Rabito test. First, as the trial judge accurately observed in granting defendant's motion for directed verdict, there was absolutely no evidence establishing that defendant was negligent in any aspect of its maintenance of the freight elevator, nor was any expert testimony elicited even as to any possible causes of the elevator's malfunction.[3]Cf. id. at 373-74 (reviewing expert testimony). In her brief, plaintiff simply asserts that because this particular elevator had recurring problems necessitating repeated service calls by defendant, defendant must have been negligent in repairing the elevator. Plaintiff also contends that defendant was negligent in light of the parallel nature of the July 22 and July 24 incidents.
We must reject these arguments. Initially, we note that the evidence introduced by plaintiff to establish defendant's repeated service calls to the freight elevator (Plaintiff's Exhibit 4) also reveals that each of the calls required different repairs by defendant. For example, one service call, on May 24, 1991, necessitated that a broken cotter pin be replaced. There was no evidence whatsoever that suggested that this pin had failed and caused plaintiff to become trapped in the elevator on July 24. Moreover, we cannot accept plaintiff's assertion that "each repair was insufficient as the elevator continued to break down in the same way." A careful review of Plaintiff's Exhibit 4 convincingly refutes the claim that the freight elevator continued to break down in the same way.
In this vein, we also pause to address plaintiff's claim that the trial court was in error in relying on Brown v. Otis Elevator Co. and Wilson v. Hibernia Nat'l Bank[4] to *1078 find that plaintiff had not carried her burden of proof. Plaintiff maintains that the controlling case should be Rossell v. ESCO, 549 So.2d 840 (La.1989), because it was decided by the Louisiana Supreme Court after Brown and Wilson. However, even assuming arguendo that Rossell was controlling, it does not require that the lower court be reversed in this case. In Rossell, the Supreme Court held that the appeals court had misapplied the relevant standard of review when it reversed a judgment for plaintiff. The Supreme Court noted that the elevator repairman had been repeatedly called to service the same elevator for the same problem. Thus, Rossell is factually distinguishable because in this case plaintiff's own evidence adequately demonstrates that the problems requiring service were not the same each time.
We must also reject plaintiff's claim that defendant's negligence was established by the similarity between the July 22 and July 24 incidents. The evidence introduced by plaintiff shows that the July 22 service call was prompted by a power failure that required the drive units on the elevators to be reset. Under defendant's contract with Dawson, defendant was not responsible for the power units used to drive the elevator machinery. Thus, there was no evidence in the record that demonstrated that defendant was responsible for plaintiff being trapped in the elevator on July 22. Moreover, the service ticket for July 24 reflects that the elevator doors were stuck open and that they needed adjustment. There simply was no basis on which to conclude that there was any relationship between the July 22 and July 24 incidents on which to find defendant negligent.
With respect to the second prong of the Rabito test, we agree with the trial court that there was no evidence to show that defendant's conduct with respect to the freight elevator was the cause-in-fact of plaintiff's injuries. The mere fact that plaintiff was injured in an elevator serviced by defendant does not, ipso facto, establish causation. Rather, plaintiff must adduce some evidence tending to show that defendant's conduct precipitated plaintiff's injuries. At best, plaintiff simply failed in that regard; at worst, considering the testimony of Kerry Williams, plaintiff should have named Dawson Construction as a defendant, given its apparently repeated conduct in allowing construction debris to fall into the elevator shaft and thereby interfere with the normal operation of the elevator. Accordingly, the trial judge was correct in his conclusion that there was simply no evidence tending to establish negligence on the part of defendant. A directed verdict for the defendant on the claim of negligence was therefore correctly entered.

B. Garde
To find defendant liable under a theory of custodial liability pursuant to La.C.C. art. 2317, it must be shown that defendant either owned "or had care, custody, or `garde' of the elevator and that under the circumstances the elevator presented an unreasonable risk of harm which resulted in the plaintiff's damage." Rabito, 633 So.2d at 376. Plaintiff argues that defendant is strictly liable for injuries arising out of the freight elevator because it had exclusive control over the elevator by virtue of its contract with Dawson.
We are compelled to reject this argument of plaintiff. The jurisprudence has clearly established that the mere existence of a service contract does not create garde on the part of an elevator maintenance contractor, even if such contract gives the contractor the exclusive right to service the elevator. Spott, 601 So.2d at 1363; Brown, 535 So.2d at 527. Plaintiff concedes this point in her brief, but argues in response that "a company that holds itself out as an expert in maintenance of elevators, and assumes an obligation to maintain an elevator so that it will be safe for use, has `control' of the elevator under Article 2317." Even if we were to accept that defendant had control over the freight elevator in question, we cannot agree with plaintiff's faulty reasoning that "[t]he maintenance contractor, who as the sole responsibility for repairs, is evidently in the best position to inspect, detect, and correct defects in the elevator. As such, it has exclusive control over the elevator even though it *1079 is not the building owner." "Best" and "exclusive" are not interchangeable terms and proving that one is in the best position to know something does not establish exclusive control over a thing. Finally, we conclude that defendant did not have exclusive control over the elevator in question because under its contract with Dawson, it was not required to install the emergency telephones in the freight elevator. That responsibility rested with a third person who thus had access to the elevator shaft and the equipment contained therein. As such, defendant simply did not have "exclusive" control over the freight elevator sufficient to support a finding of liability under Civil Code article 2317.
Moreover, even if defendant had garde over the elevator, plaintiff fails to argue that the elevator presented an unreasonable risk of harm. Absent such a showing, there can be no liability under La.C.C. art. 2317. Accordingly, plaintiff's claim that defendant was strictly liable for her injuries must be rejected.

C. Res Ipsa Loquitur
According to the Louisiana Supreme Court, for a plaintiff to prevail on a theory of res ipsa loquitur against an elevator maintenance company, it must be shown that
1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing the injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part.
Spott v. Otis Elevator Co., 601 So.2d 1355, 1362 (La.1992). However, before a plaintiff may invoke res ipsa loquitur, she must show facts that "warrant the inference that the injury would not have occurred absent defendant's negligence so that the initial burden of proof is on the plaintiff." Wilson, 517 So.2d at 1208.
Res ipsa loquitur is not appropriate in this case for three reasons. First, plaintiff failed to show or raise an inference that the accident was cased by negligence on the part of defendant. Second, as discussed above, plaintiff did not establish that defendant had exclusive control over the elevator, as underscored by the fact that defendant did not have the contract to install the emergency telephone in the freight elevator, thereby affording someone else access to the elevator and the elevator shaft. And third, the evidence adduced by plaintiff did not show that the circumstances of the accident were such that one must conclude that defendant was negligent. In fact, Kerry Williams' testimony shows that there was another plausible explanation for the accidentconstruction debris left in the elevator shaft by Dawson.

CONCLUSION
For the foregoing reasons, the judgment of the lower court is affirmed.
AFFIRMED.
NOTES
[1] The elevator in question had a front gate that could be lifted in one piece. It also had a set of iron hoistway doors that sealed off the elevator shaft when the elevator was not in position. These doors are split horizontally and to open them, the top door is pushed up and the bottom door is pushed down.
[2] Montgomery held a subcontract with Dawson Construction Company ("Dawson"), the general contractor in charge of renovations for the entire building, to modify and install new elevators in the building. The contract also provided that Montgomery would maintain those elevators. Dawson was not named as a defendant in the suit.
[3] We recognize plaintiff's claim that it would have been difficult, if not impossible, to have an expert inspect the elevator after plaintiff's accident and before it was serviced by defendant. However, we cannot accept that it was impossible for plaintiff to produce expert testimony based on a review of the elevator service logs and a later inspection of the machinery. The situation that plaintiff was presented with is not unlike that facing most plaintiffs who bring actions against elevator service companies.
[4] Although plaintiff's brief asserts that the trial court relied on Brown and "Williams" for its decision, a review of the trial court's reasons for judgment discloses that the court was relying on Brown and Wilson.