811 So.2d 54 (2002)
Nathaniel JOSEPH
v.
ENTERGY and the City of New Orleans.
Lucinda Mitchell and Mitchell's Fruit Stand, Inc.
v.
City of New Orleans and Entergy Services, Inc.
Nos. 2000-CA-2213, 2000-CA-2214.
Court of Appeal of Louisiana, Fourth Circuit.
February 13, 2002.
Writ Denied May 10, 2002.
*56 Robert G. Harvey, Sr., Mark P. Glago, Thomas P. Early, Harvey, Jacobson & Glago, APLC, New Orleans, LA, Counsel for Plaintiff/Appellee, Nathaniel Joseph.
Nolan P. Lambert, Chief Deputy City Attorney, John E. Smith, Deputy City Attorney, Mavis S. Early, City Attorney, Kimlin S. Lee, Assistant City Attorney, New Orleans, LA, Counsel for Defendant/Appellee, City of New Orleans.
Marc D. Winsberg, Schonekas, Winsberg, Evans & McGoey, and Kenneth P. Carter, Marcus V. Brown, Entergy Services, Inc., New Orleans, LA, Counsel for Defendant/Appellant, Entergy New Orleans, Inc.
Tricelyn L. McDonald, New Orleans, LA, Counsel for Plaintiff/Appellee, Lucinda Mitchell.
Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr.
LOVE, Judge.
Defendant, Entergy New Orleans, Inc. (hereinafter referred to as "Entergy"), appeals the judgment of the trial court that, after a bench trial, found in favor of the plaintiffs, Nathaniel Joseph and Lucinda Mitchell, and intervenor, Kecia Joseph. The trial court found that the corrosion at the base of the light standard that fell, seriously injuring Nathaniel Joseph and destroying Lucinda Mitchell's fruit stand, should have been discovered and repaired by the defendant, Entergy, who had custody and control of the light standard. The trial court found Entergy 100% liable for the accident. It is from this judgment *57 that Entergy now appeals. For the following reasons, we affirm the judgment of the trial court in part and reverse in part.

FACTS AND PROCEDURAL HISTORY
On March 18, 1996, during a storm in which gusts reached up to 58 miles per hour, a 626-pound metal light standard struck Nathaniel Joseph while he was closing the family business, Mitchell Fruit Stand. The light standard crashed into the fruit stand canopy and hit Nathaniel Joseph on the head. He was subsequently knocked to the ground, sustaining permanent injury to his head and back. He required several surgeries on his back following the incident and will require a lifetime of medical care. In addition, Nathaniel Joseph suffers sexual dysfunction as a result of his injuries. The total damages awarded against Entergy were $3,060,468.00. Of that, Entergy now appeals the $1,750,000 awarded to Nathaniel Joseph for general damages, $142,000 awarded to Nathaniel Joseph for loss of personal services, and $100,000 awarded to Kecia Joseph for loss of consortium. Entergy raises several issues on appeal. Specifically, Entergy argues that it should not have been found strictly liable or negligent, the loss of consortium claim of Kecia Joseph was prescribed, the general damages awarded to Nathaniel Joseph were excessive, and the trial court improperly dismissed Entergy's cross-claim against the City of New Orleans (hereinafter referred to as "the City").
There are five parties to this appeal. The plaintiffs/appellees are Nathaniel Joseph and Lucinda Mitchell. The intervenor/appellee is Kecia Joseph. Entergy is the defendant/appellant and the City is the defendant/appellee.

STANDARD OF REVIEW
It is well settled that a trial court's findings of fact will not be disturbed unless the record establishes that a factual, reasonable basis does not exist and the finding is clearly wrong or manifestly erroneous. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173. The Supreme Court announced a two-part inquiry for the reversal of the trier of fact's determinations: 1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the factfinder, and 2) the appellate court must also determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Duncan v. Kansas City Southern Railway Co., XXXX-XXXX, p. 3 (La.10/30/00), 773 So.2d 670, 675 (citing Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993)). If, in light of the record in its entirety, the trial court's findings are reasonable, then the appellate court may not reverse, even if convinced it would have weighed the evidence differently sitting as the trier of fact. Id., (citing Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)). Thus, in order to reverse a trial court's finding of facts, an appellate court must first determine, after reviewing the record in its entirety, that a reasonable factual basis does not exist for the finding and that the record establishes that it is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).

DISCUSSION
In the defendant's first assignment of error, Entergy argues that the trial court erred in holding Entergy strictly liable for the condition of the City's property on the basis of the service contract.
Entergy argues that since it did not have custody of the light standard in question, it was wrongly held strictly liable for the accident on March 18, 1996. The defendant was found strictly liable by the *58 trial court under La. C.C. art. 2317[1], which states:
We are responsible not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
Whether Entergy had actual custody and control of the light standard in question is central to determining strict liability. In Loescher v. Parr, 324 So.2d 441, 451 n. 7 (La.1975), the Supreme Court defined article 2317 "custody":
The things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairmen, among others ... The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it.
To find defendant liable under a theory of custodial liability pursuant to La. C.C. art. 2317, it must be shown that defendant either "owned or had care, custody, or `garde' ... and that under the circumstances... presented an unreasonable risk of harm which resulted in the plaintiff's damage." Ledet v. Montgomery Elevator Co. & XYZ, 94-0411, p. 5 (La.App. 4 Cir. 10/13/94), 644 So.2d 1075, 1078 (citing Rabito v. Otis Elevator, 93-1001, p. 15 (La.App. 4 Cir. 2/11/94), 633 So.2d 368, 376). This court in Ledet found that the existence of a service contract does not create "garde" even if the contract gives that contractor an exclusive right to service. Id. In Ledet an elevator service contractor was not found to have "garde" because it was not the only entity to have access to and responsibility for the elevators in question. Entergy, the only provider of electricity to the city, was the only entity to have any responsibility for the repair and maintenance of the light standards.
This court in Withers v. Regional Transit Authority, 95-1186 (La.App. 4 Cir. 1/19/96), 669 So.2d 466, found that the language in the contract between NOPSI (Entergy's predecessor) and the City established that NOPSI had custody of the street lights and therefore could be held strictly liable for damage that it caused. The court in Withers relied on the language in the 1982-85 contract to make its determination.
The court found that the contract as a whole supported the conclusion that NOPSI had custody of the street lighting. In particular, the court cited to section I of the contract, regarding the scope of the contract, making NOPSI "solely responsible for the design, installation, maintenance and operation of the entire street lighting system as covered under the terms of this Contract." Withers, 95-1196 at p. 4, 669 So.2d at 469. Section V of the contract, which deals with damages to person or property, states that NOPSI "shall indemnify and save harmless City from all suits and actions that may be brought against it by reason of any injury or alleged injury to the person or property of another resulting from negligence or on account of any act of commission or omission on the part of the company (NOPSI), its representatives or employees in supplying *59 that services provided for herein." Section XVI of the contract, which outlines the maintenance obligations, states that "All street lighting units and those special installations maintained and operated by Company at fixed rates shall be legibly numbered for identification and properly maintained by Company and ungalvanized steel parts thereof shall be painted whenever considered necessary to maintain appearance or to protect against deterioration from rust." The section continued, "Maintenance, as contemplated herein, shall include repair of all street lighting units ... where such repair is required due to deterioration...."
The contract in the case at bar specifically outlines the conditions and terms under which Entergy is to maintain the light standards, and it is clear that under the contract Entergy is the only entity with the access, authority, and duty to perform maintenance under the contract. The Withers court also found that NOPSI was the only entity with access and equipment to repair and maintain the street lighting system and was under specific contract to do so.
Entergy argues that the contract of 1982-85 had expired, and at the time of the accident the Settlement Agreement of 1994 governed its relationship with the City. Assuming that this is true, it does not preclude finding that Entergy had custody of the light standards. Pursuant to the settlement agreement, the City contracted with Entergy to repair the lighting system and bring it up to the standards that were part of the 1982-85 contract; however, Entergy never fulfilled the terms. In fact, the settlement agreement specifically states that Entergy would have all poles numbered in accordance with a numbering system on or before May 1, 1995. The agreement continues, "NOPSI will paint all poles identified in the Street Light Inventory as "needing paint" or "heavily rusted." This painting work will be completed by February 28, 1995." The agreement goes on further to state, "All poles or fixtures identified by the Street Light Inventory as being structurally damaged, broken or missing will be repaired or replaced by May 1, 1995." The agreement continues, "It is expressly understood and agreed by the parties that this settlement does not modify any obligation or right of either party to the Contract ... NOPSI acknowledges and agrees that it shall continue to perform its obligations and duties pursuant to the Contract for so long as the Contract remains in force and effect and has not been terminated."
Entergy claims it cancelled the contract with the City in February 1996, one month before the accident. In fact, Entergy was renewing the contract on a month to month basis. Testimony at trial showed that Entergy had "cancelled" the contract before but had continued to provide service. In the instant case, Entergy, even after canceling the contract in February 1996, continued to service the light standards. From these facts, the trial court could reasonably conclude the contract was still in force.
Whether we view the settlement agreement as a separate obligation from the contract between Entergy and the City or both as one continuous agreement, the result is the same; Entergy had complete and exclusive control over the maintenance and upkeep of the light standards. Therefore, Entergy is reasonably deemed to have custody under either agreement.
Not only did Entergy have custody of the light standards, but the corroded condition of the light standard that hit Mr. Joseph created an unreasonable risk of harm. This court in Bell v. State of Louisiana, 553 So.2d 902, 907-08 (La.App. 4 Cir.1989), stated that a defect is some flaw *60 or fault existing or inherent in the thing itself that creates an unreasonable risk of harm to others. To evaluate whether there is a defect, courts determine whether the condition of the thing created an unreasonable risk of harm to a person to whom a duty is owed. Id. Surely, Entergy does not expect this court to find that a severely corroded, 626-pound light standard that hovers over public walking areas does not pose an unreasonable risk. Entergy also cannot reasonably expect that just because the contract or settlement agreement did not explicitly include the public as a third party that no duty is owed. The purpose of street lighting is to provide for the safety of the public.
The trial court reasonably found after hearing the testimony and reviewing the evidence, that the rust and corrosion of the light standard that fell on Mr. Joseph should have been repaired pursuant to the 1994 Settlement Agreement. NOPSI was to have painted all of the poles identified as needing painting or heavily rusted by February 28, 1995, one full year before the accident. According to the testimony of Mr. James Hickman, an Entergy employee of twenty-two years and supervisor of the light standard maintenance crews, the light standard in question had not been painted in 1995. This finding was supported by the testimony of Mr. Robert H. Lipp, an associate professor of engineering at the University of New Orleans and an expert in structural engineering. Mr. Lipp stated that from his inspection in 1999 he observed, "[The] pole was subject to severe corrosion which left only a little bit of metal left which could not resist the winds of that particular night." He further stated that the light standard should have been able to withstand hurricane force winds, approximately 120 miles per hour, and that the winds on the night in question were 38-58 mile per hour gusts. In Mr. Lipp's expert opinion the corrosion of the pole had existed for at least 5 years. He also stated that painting is a very important step in preventing corrosion on metal, and in his opinion the light standard in question had not been painted in 1995.
The trial court found not only that Entergy had custody of the light standard, but also by neglecting its duties pursuant to the agreements with the City, created an unreasonable risk of harm to the public, and in fact seriously injured Nathaniel Joseph. We find nothing in the record to suggest that these findings were unreasonable. The trial court did not abuse its discretion in finding Entergy strictly liable.
In Entergy's second assignment of error it argues that the trial court erred when it concluded that Entergy was liable to the plaintiffs under negligence theory.
The Supreme Court in Roberts v. Benoit, 605 So.2d 1032, 1041-42 (La.1992), states the standard of negligence to impose liability under La. C.C. arts. 2315 and 2316 is a four part test: 1) was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred; 2) did the defendant owe a duty to the plaintiff; 3) was the duty breached; 4) was the risk, and harm caused, within the scope of protection afforded by the duty breached.
The evidence at trial clearly shows that the light standard in question, falling atop his head, caused Nathaniel Joseph's injuries. The evidence also strongly suggests, through the testimony of Mr. Lipp, that the reason why the light standard fell was due to corrosion that had existed for many years at the base of the light standard. This corrosion would have been prevented had Entergy lived up to its contract with the City and certainly the corrosion should have been discovered and repaired *61 pursuant to the 1994 Settlement Agreement. Entergy owed a duty to the public and a contractual duty to the City to maintain the light standard in such a way that public safety is insured. Entergy breached that duty by not maintaining the light standard and by allowing the pole that struck Mr. Joseph to go unpainted for several years, allowing corrosion to develop that would inevitably pose danger to the public. It was in the scope of Entergy's duty to maintain the light standard so that it could not damage a person or property. The evidence showed that painting the pole would have likely prevented the harm. However, Entergy breached its duty to paint the poles and the harm occurred.
This Court in Withers added a requirement of notice to the defendant of the impending harm in order to establish a claim of negligence. In the instant case, there is evidence to show that there had been reports to Entergy of problems with the light standard that struck Nathaniel Joseph, some of which came from Entergy's own inventory of light standards in need of paint or repair. Clearly the testimony and facts brought forth at trial support a reasonable finding that Entergy was negligent in maintaining the light standard.
In Entergy's third assignment of error it argues that the trial court erred in dismissing Entergy's cross-claim against the City.
We find however that for the reasons stated above, the trial court was reasonable in finding there was no basis for assessing liability against the City. Since the City, in the trial court's view, could not be found liable, the dismissal of the cross-claim was reasonable.
In its fourth assignment of error, Entergy argues that the trial court erred in awarding intervenor, Kecia Joseph, an excessive sum based on a prescribed loss of consortium claim.
This assignment of error involves a question of law. Appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect. Jim Walter Homes, Inc. v. Jessen, 98-1685 (La.App. 3 Cir. 3/31/99), 732 So.2d 699. If the trial court's decision is based on its erroneous application of law, rather than on the valid exercise of discretion, its decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). When an appellate court finds that a reversible error of law is made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).
Entergy appeals the judgment awarded to Kecia Joseph because, they argue, the claim was prescribed. We agree that Kecia Joseph's claim of loss of consortium is prescribed on its face. Delictual actions are subject to a one-year prescriptive period. La. C.C. art. 3492. If the face of the petition shows that the prescriptive period has elapsed, the plaintiff has the burden of proving that prescription has not run. Hoerner v. Wesley-Jensen, Inc., 95-0553, p. 3 (La.App. 4 Cir. 11/20/96), 684 So.2d 508, 510. However, the evidence must be strictly construed against prescription and in favor of maintaining the obligation sought to be extinguished. Id. La. C.C.P. art. 1067 provides:
An incidental demand is not barred by prescription or peremption if it was not barred at the time the main demand was filed and is filed within ninety days of the date of service of main demand or in the case of a third party defendant within *62 ninety days from service of process of the third party demand.
A petition of intervention is an incidental demand. La. C.C.P. art. 1031. La. C.C.P. art. 1067 applies to all petitions of intervention. Moore v. Gencorp, Inc., 93-0814 (La.3/22/94), 633 So.2d 1268. The fundamental purpose of prescription statutes is only to afford a defendant economic and psychological security if no claim is made timely, and to protect it from stale claims and from loss of non-preservation of relevant proof. Traylor v. Reliance Ins. Co., 98-1379 (La.App. 4 Cir. 7/1/98), 715 So.2d 1253. The original pleading was filed on December 20, 1996 and served December 27, 1996. The intervention for loss of consortium was filed July 9, 1997, 216 days after the original petition was filed and one year and 113 days after the incident. The intervention is clearly outside the statutory prescriptive period and therefore prescribed on its face.
In its fifth assignment of error, Entergy argues that the trial court abused its discretion when it awarded Nathaniel Joseph $1,750,000 in general damages and $142, 000 for loss of personal services.
The Louisiana Supreme Court has made it clear that appellate courts are not to disturb damage awards, except under the most extreme circumstances. Discretion vested in the trier of fact is "great", and even vast, so that an appellate court should rarely disturb an award of general damages. Warner v. City of New Orleans, 96-1296, p. 5 (La.App. 4 Cir. 5/30/97), 694 So.2d 1231, 1233. The role of the appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260(La.1993); see also Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351, 352 (La.1974).
The appellant makes a great effort to outline why we should consider the $1,750,000 in general damages and $142,000 for loss of personal services awarded to Nathaniel Joseph as excessive. Entergy goes through a litany of examples of prior cases where awards were less than what Nathaniel Joseph received for similar injuries, at least from the appellant's point of view. However, the Supreme Court in Anderson stated that "the awards made in other cases provide no scale of uniformity; their use is limited to serving as an aid to determine if the present award is greatly dis-proportionate (sic) to similar awards (if truly similar), whether an issue of abuse of discretion may exist in the present case." Anderson, 304 So.2d at 352. The court continued, "the question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it." Id. at 354. That such evidence might also support a greater (or smaller) award will not justify a change in the amount by the appellate court. Id. Only when the trial court abuses its broad discretion should the award be adjusted, either up or down. Id. "... [I]n fixing quantum of damages each case must necessarily depend upon its own particular facts." Gaspard v. LeMaire, 245 La. 239, 259, 158 So.2d 149, 156 (La. 1963). Before a trial court award may be questioned as inadequate or excessive the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). In Reck, this court disapproved of the use of a scale of prior awards in cases with generically similar *63 medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. Youn, 623 So.2d at 1260.
For our purposes we are not persuaded by Entergy's extensive list of example of awards for what it deems similar injuries to Nathaniel Joseph. We find that the injuries to Nathaniel Joseph are quite severe. He has had several serious surgeries on his back, loss of mental function, and will likely require a lifetime of care. He is no longer able to work or sustain a healthy sex life with his wife. We find that the award granted to Nathaniel Joseph as a result of his injuries is reasonable given the facts. There was no abuse of discretion on the part of the trial court.
In its final assignment of error, Entergy argues that the trial court abused its discretion when it denied Entergy's motion for a continuance in the wake of what Entergy deemed "an eleventh-hour claim."
Entergy argues that Nathaniel Joseph made a belated claim for memory loss and that the untimeliness of this claim prevented it from preparing an adequate defense. In anticipation of presenting his claim for memory loss, Mr. Joseph listed as expert witnesses Cornelius Gorman, Ph. D., Melvin Wolfson, Ph.D. and Leighton Stamps, Ph.D. Gorman and Wolfson, who testified to the damages associated with the memory loss, were both included on Mr. Joseph's original witness list dated July 2, 1998. Thus, Entergy had ample opportunity to conduct discovery prior to trial. Stamps, who testified as to the nature of the memory loss, was placed on a supplemental witness list dated January 6, 2000. Entergy argues that this addition was untimely; however, it is apparent that the trial court had not cut off discovery, as evidenced by its allowing utility to submit a supplemental witness list five days later, on January 11, 2000. Furthermore, Entergy was on notice of the brain injury prior to the submission of Stamps' name, as Nathaniel Joseph's complaint of memory loss was noted in Dr. Olsen's, Nathaniel Joseph's neurologist, record of October 1999. Entergy had full access to Nathaniel Joseph's medical records. Hence, the trial court did not abuse its broad discretion in denying Entergy's request for a continuance on this issue.

CONCLUSION
In conclusion, we find that upon reviewing the record in its entirety the trial court did not commit manifest error in its finding liability on the part on Entergy under both strict liability and negligence standards. We also find that the $1,750,000 awarded to Nathaniel Joseph for general damages and the $142,000 awarded for loss of personal services was not unreasonable given the extent of his injuries. However, we do find that the trial court did commit error in its determination that Kecia Joseph's claim of loss of consortium was not prescribed; we reverse the award in her favor.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] La. C.C. art. 2317.1 is inapplicable to the present case because it became effective after the date of the incident.