KIRBY, Judge.
 

 | iDefendant/third party plaintiff, Enter-gy New Orleans, Inc., appeals the trial court judgment granting summary judgment in favor of third party defendant, TriStem, Ltd., and dismissing Entergy’s claim against TriStem. For reasons that follow, we affirm.
 

 The underlying claim in this litigation is that of
 
 Nathaniel Joseph, et al. v. Entergy New Orleans, Inc., et al.
 
 Mr. Joseph was severely injured on March 18,1996 when a metal light pole fell and struck him while he was closing his family’s fruit stand on Tulane Avenue in New Orleans. Mr. Joseph sued Entergy and the City of New Orleans. The trial court found Entergy 100% liable for the accident, and Entergy appealed. This Court affirmed the finding of Entergy’s 100% liability for this accident in
 
 Joseph v. Entergy,
 
 2000-2213, 2000-2214 (La.App. 4 Cir. 2/13/02), 811 So.2d 54.
 

 Prior to the trial of the main demand, the trial court stayed all litigation associated with the third party demands of Enter-gy until further orders of the court. The trial court authorized the filing of the third party demands, but severed them from the trial of the main demand.
 

 |2One of the third party demands filed by Entergy named TriStem as a third party defendant. In this demand, Entergy alleged that from 1990 through 1992, TriS-tem conducted an inspection of the street lights in the City of New Orleans on behalf of the City. As part of that inspection, TriStem reported to the City on the maintenance and condition of the street lights. Entergy claimed that TriStem negligently failed to determine the allegedly defective condition of the light pole in question. According to Entergy, a finding of liability on its part entitles it to either indemnification from TriStem or, alternatively, to contribution from TriStem as between joint tort-feasors.
 

 TriStem filed a motion for summary judgment asking for dismissal of Entergy’s third party demand. TriStem claims that there are no issues of material fact and that it is entitled to judgment as a matter of law. In support of its motion, TriStem submitted a memorandum, the 1991 consulting agreement between TriStem and the City of New Orleans, the affidavit of the president and senior partner of TriS-tem, Joe Seeber, the 1994 settlement agreement between the City and Enter-gy’s predecessor, New Orleans Public Service, Inc. (NOPSI), and the trial court’s reasons for judgment in the underlying case finding Entergy 100% liable for plaintiffs injuries.
 

 In opposition to TriStem’s motion, En-tergy filed a memorandum, letters sent in 1994 from Joe Seeber to representatives of Asplundh, a company that also participated in the inventory process, and the City regarding work performed by the street light inventory crew, excerpts from Joe Seeber’s deposition, excerpts from the transcript of the 2000 trial, court rulings regarding another third party defendant sued by Entergy, forms used in the street light inventory, reasons for | ¡Judgment from the 2000 trial, and this Court’s 2002 opinion involving the appeal of the 2000 trial court judgment.
 

 Following a hearing, the trial court granted TriStem’s motion for summary
 
 *301
 
 judgment, and dismissed Entergy’s third party demand against TriStem. The trial court also issued an order designating its judgment as final for the purpose of an immediate appeal. Entergy now appeals.
 

 In its sole assignment of error, Entergy argues that the trial court erred in granting summary judgment in favor of TriS-tem. TriStem’s motion for summary judgment was based on three arguments: (1) Entergy cannot recover tort indemnity from TriStem because Entergy was found to be 100% at fault for causing plaintiffs injuries, (2) Entergy cannot seek contribution from TriStem because its claim against TriStem is not based on an intentional or willful act, and (3) TriStem did not owe a duty to plaintiff or Entergy to maintain the street light pole that caused plaintiffs injuries. We find that the trial court correctly granted summary judgment in favor of TriStem because no genuine issues of material fact exist as to En-tergy’s third party claim against TriStem. Because of that finding, the issues of En-tergy’s entitlement to seek indemnification or contribution from TriStem are moot.
 

 Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966. Article 966 was amended in 1996, but the burden of proof remains with the mover to show that no genuine issue of material fact exists. If the mover will not bear the burden of proof at trial, his burden on the motion does not require him to negate all essential 14elements of the plaintiffs claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966 C(2);
 
 Fairbanks v. Tulane University,
 
 98-1228 (La.App. 4 Cir. 8/31/99), 731 So.2d 983.
 

 After the mover has met its initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966 C(2);
 
 Smith v. General Motors Corp.,
 
 31,258 (La.App. 2 Cir. 12/9/98), 722 So.2d 348. If the non-moving party fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966;
 
 Schwarz v. Administrators of Tulane Educational Fund,
 
 97-0222 (La.App. 4 Cir. 9/10/97), 699 So.2d 895. Appellate courts review summary judgments
 
 de novo,
 
 using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate.
 

 The evidence submitted by TriStem in support of its motion for summary judgment established that in 1991, TriStem entered into a consulting agreement with the City of New Orleans under which TriStem agreed to “conduct a study of prior electrical and/or telephone billing to determine that the amounts paid by the CLIENT [City] are correct.” The affidavit of the TriStem president, Joe Seeber, established that TriStem is in the business of providing consulting services to individuals, businesses and governmental bodies for the purpose of determining whether or not the amounts they have been billed by electrical companies are correct. TriStem is not engaged in the business of providing engineering services or maintenance services to buildings or facilities that receive electrical services.
 

 |fiMr. Seeber further stated that under its agreement with the City, TriStem undertook responsibility for determining the accuracy of electrical billings and to conduct a survey of the City’s street light
 
 *302
 
 system to determine if Entergy had actually performed maintenance on the poles for which Entergy had billed the City on a monthly basis. In the affidavit, Mr. See-ber also stated that after the inspection of the poles was completed, the City and Entergy in 1994 entered into a settlement agreement that required Entergy to maintain the street light poles as it had been required to do under previous agreements. According to Mr. Seeber, TriStem concluded its study in 1993 or 1994, and had no knowledge of the defective condition of the street light pole that fell and injured plaintiff.
 

 The 1994 settlement agreement between the City and Entergy’s predecessor, NOPSI, stated that the street light inventory was completed in June 1994. In the agreement, NOPSI agreed to paint all poles identified in the street light inventory as “needing paint” or “heavily rusted” by February 28, 1995. The agreement also obligated NOPSI to repair or replace all poles or fixtures identified in the inventory as being structurally damaged, broken or missing by May 1,1995.
 
 [1]
 

 In reasons for judgment issued after trial on the main demand in 2000, the trial court stated that the testimony established that the street light pole that struck plaintiff fell because it was rusted and corroded, and therefore, defective. The trial court also found that Entergy did not complete the repairs, updating and painting it was obligated to complete under the terms of the settlement agreement. The court further found that if Entergy had followed the street light inventory and painted the |fipole in question, it would have discovered the defective condition of the pole months before plaintiffs accident.
 

 In opposition to TriStem’s motion for summary judgment, Entergy submitted the street light inventory form showing that the metal light pole that struck plaintiff was classified as “needs painting.” Other categories not checked as to the light pole at issue included “structural damage,” “broken,” “missing,” “heavily rusted,” and “knocked down.” A January 28,1994 letter from Joe Seeber to a representative of Asplundh, a company that also participated in the inventory process, stressed the importance of accuracy in the inventory process and noted errors and problems found by TriStem. A March 4, 1994 letter from Joe Seeber to the City requested certain information from the City, and stated that such information was essential for TriStem to assemble a “quality inventory.” An excerpt of the deposition of Joe Seeber included his testimony that he performed TriStem’s initial inspection of the street lights. An excerpt from the 2000 trial included testimony from En-tergy employee Alvin Grille that a representative of TriStem participated in the street light inventory with representatives of other companies.
 

 At the hearing on the motion, the trial court stated that it was granting summary judgment in favor of TriStem because “they [TriStem] fulfilled what they were supposed to do as a matter of law. I don’t think they’re responsible for reporting defects.” A review of the evidence submitted by TriStem establishes that the task TriStem undertook regarding the street light inventory was to determine if Enter-gy had actually performed the work for which it had already billed the City. While the evidence offered by Entergy shows that TriStem assumed the responsibility of
 
 *303
 
 providing an accurate inventory to the City and participated in the |7street light inventory with other companies, there is no evidence that TriStem assumed the responsibility of determining defects in the light poles. TriStem’s role was simply to determine the accuracy of Entergy’s previous billings to the City. TriStem is not in the business of providing engineering services or maintenance services.
 

 Furthermore, there is no evidence that TriStem undertook the responsibility of continuing to advise the City and/or Enter-gy about the condition of the light poles once the inventory had been completed. The inventory was completed in June 1994 and plaintiffs accident occurred in March 1996. The evidence established that the only obvious problem with the light pole in question as of June 1994 was that it needed to be painted. Entergy presented no evidence showing that the information in the inventory was not accurate at the time the inventory was completed.
 

 We find that TriStem carried its burden of proving that it did not owe a duty to plaintiff or Entergy to determine the alleged defect in the pole that fell on plaintiff. The burden then shifted to Entergy to produce factual support sufficient to establish that it would be able to satisfy its evidentiary burden at trial. Entergy failed to do so.
 

 For the reasons stated above, we find that no genuine material fact exists as to Entergy’s third party claims against TriS-tem, and that TriStem is entitled to summary judgment as a matter of law. For the reasons stated above, the trial court judgment is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . There is no evidence in the record as to the actual date that the 1994 settlement agreement between NOPSI and the City was signed. The agreement states the month and year of the agreement as December 1994, but the day is not filled in on any of the copies in the record.